ELECTRONICALLY FILED
Lonoke County Circuit Court
Deborah Oglesby, Circuit Clerk
2020-Apr-30 15:02:55
43CV-20-346
C23D01 : 50 Pages

## IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS

SHAWN SMITH, on behalf of
himself and all others similarly situated,    **PLAINTIFF**

vs.    CASE NO. _____

SOUTHERN FARM BUREAU
CASUALTY INSURANCE COMPANY    **DEFENDANT**

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT

Plaintiff, Shawn Smith, brings this class action on behalf of himself and all others similarly situated, by and through undersigned counsel, and for his Complaint against Southern Farm Bureau Casualty Insurance Company ("Defendant" or "Farm Bureau") states and alleges as follows:

### INTRODUCTION

1.  This is a class action whereby Plaintiff seeks, for himself and all other similarly situated insured customers or former customers of Farm Bureau, declaratory and injunctive relief, as well as compensatory damages and other appropriate remedies, resulting from Farm Bureau's common policy and general business practice of using arbitrary and unexplained adjustments to improperly reduce insureds' total loss valuations and claims payments in violation of its contractual obligations and Arkansas law.

2.  When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Farm Bureau, to undervalue and underpay the claims by manipulating the data used to value the vehicles. Specifically, under its insurance policies' terms, Farm Bureau has a contractual duty to pay the "actual cash value" of a loss vehicle when adjusting total loss claims. This contractual obligation is consistent with applicable Arkansas law, which provides Farm Bureau may not use or rely on unmeasurable,

indiscernible, nonitemized, unspecified and/or unexplained deductions when adjusting first-party automobile total loss claims.

3. Notwithstanding its contractual obligations, Farm Bureau systemically fails to pay its insureds the "actual cash value" of their total loss vehicles by taking improper adjustments so as to artificially decrease its insureds' recovery.

4. Farm Bureau applied a "Projected Sold Adjustment," resulting in a 9% downward adjustment to each of the base values of the comparable vehicles, which were used to derive the value of Plaintiff's total loss vehicle. This 9% reduction is wholly arbitrary and not based on any statistical, objective or verifiable data. The adjustment was applied on each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The deduction is not measurable, discernable or itemized and no explanation is provided as to the evidentiary basis for the 9% reduction. The only purported explanation for the downward adjustments in Plaintiff's multi-page valuation report is a general, nondescript statement found on page 6, providing the reduction is "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)."

5. Moreover, pursuant to its contracts of insurance, Farm Bureau must consider a vehicle's "fair market value" when settling a total loss claim for actual cash value. The Projected Sold Adjustment, however, is not based in fact, as it is contrary to the used car industry's market pricing and inventory management. Automobile dealers' list prices are priced to market, in part to reflect the intense competition in the context of internet pricing and comparison shopping. Thus, it would be atypical for an insured exercising so-called "consumer purchasing behavior" to be able to secure a reduction of

the online list price—much less a 9% reduction. In short, the Projected Sold Adjustments are statistically invalid adjustments premised on unknown, unexplained, and factually erroneous assumptions to deliberately undervalue policyholders' total loss claims and understate the fair market value of total loss vehicles.

6. This pattern and practice of undervaluing comparable and total loss vehicles when paying first-party automobile total loss claims, which benefits the insurer at the expense of the insured, is not permitted under the terms of Farm Bureau's policies with its insureds, nor under Arkansas law applicable to insurance contracts.

## JURISDICTION AND VENUE

7. Plaintiff and all proposed class members are citizens of the State of Arkansas. Farm Bureau is an insurance company authorized to do business in the State of Arkansas, and, at all relevant times hereto, was engaged in the marketing, sale and issuance of automobile insurance policies in the State of Arkansas.

8. The compensatory damages being sought by Plaintiff do not exceed $75,000, and no individual member of the Class would possess a compensatory damage claim in excess of $75,000. Additionally, the aggregate compensatory damages (in the amount of "Projected Sold Adjustments" wrongfully deducted without itemization or explanation), claimed by Plaintiff and the Class are below the $5,000,000 federal jurisdictional threshold under the Class Action Fairness Act ("CAFA").

9. Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and venue is proper.

## PARTIES

10. Plaintiff, Shawn Smith, resides in Lonoke County and is a citizen of the state of Arkansas. At all relevant times hereto, Plaintiff was contracted with Farm Bureau for automobile insurance. On or about December 13, 2018, Plaintiff's insured vehicle was deemed a total loss.

11. Defendant Southern Farm Bureau Casualty Insurance Company ("Farm Bureau") is a property and casualty insurance company that owns numerous offices throughout Arkansas, Colorado, Florida, Louisiana, Mississippi, and South Carolina. Defendant Farm Bureau's corporate headquarters is located at 1800 East County Line Road, Ridgeland, Mississippi 39157. Defendant Farm Bureau conducts business in Arkansas through insurance agents and other company personnel.

## FACTUAL ALLEGATIONS

**A. Farm Bureau's Improper Valuation of Total Loss Claims.**

12. Farm Bureau sells automobile insurance that provides coverage for property damage done to a vehicle, whether by collision, theft, or other perils.

13. Plaintiff, like all proposed class members, currently has, had, or was covered under a contract of automobile insurance with Farm Bureau. The contract of insurance between Plaintiff, as well as each proposed class member, and Farm Bureau provides coverage for the total loss of a vehicle on the basis of the "actual cash value" of the vehicle or the "[a]mount necessary to repair or replace the auto or its damaged part(s) with like kind and quality." *See* Exhibit 1 (Policy) at p. 20. The determination of a loss vehicle's actual cash value "include[s] consideration of fair market value, age, and condition of the item in question at the time of loss or damage." *Id.* The material policy

language for all Farm Bureau policies during the relevant time period is identical or substantially the same.

14. Farm Bureau systematically bases its valuations and payments on total loss claims on manipulated data and reports that do not meet Farm Bureau's duties under its insurance contracts, imposing arbitrary, unmeasurable, indiscernible, nonitemized, unspecified and unexplained "Projected Sold Adjustments" to artificially reduce the values of comparable vehicles. Moreover, these deductions have no basis in fact and significantly understate the fair market value of insureds' total loss vehicles.

15. Upon information and belief, to calculate its valuations and claims payments, Farm Bureau obtains a market valuation report from a third-party company called Mitchell International ("Mitchell"). Mitchell uses a software program by JD Power called "Mitchell WorkCenter Total Loss" ("WCTL") to calculate the value of a total loss vehicle. The WCTL software was designed for use by insurance companies and is not an objective industry source used to determine the actual retail cost of used cars.

16. The WCTL software program purports to contain values for comparable vehicles recently sold or for sale in the geographic area of the insured. The valuation reports generated by the WCTL software program also purport to contain values for the loss vehicle based upon the data for the comparable vehicles in the report. Upon information and belief, Farm Bureau instructs Mitchell as to what specific data to include in the report as the basis for the valuation, including whether to apply a "Projected Sold Adjustment" to the comparable vehicles.

17. These adjustments, which purport to account for the difference between the listed price of the comparable vehicle and an assumed potential price that the vehicle might

sell for, are made on top of adjustments to account for mileage, options, and equipment. The projected sales prices are invariably lower than the list prices of the comparable vehicles, regardless of the mileage, options, equipment, and condition of the vehicles. Thus, Farm Bureau is not providing its insureds with the "actual cash value" or "actual cost" of the comparable vehicles, but, rather, it is wrongly assuming a significant debit for a speculative lower negotiated sold price that its insureds must secure for themselves through engaging in what Farm Bureau describes as "consumer purchasing behavior."

18. Farm Bureau provides no data or explanation of industry practices, market forces or "consumer purchasing behavior" in its valuation reports to support *any* "Projected Sold Adjustment," much less one at 9%. The only stated reason given for its 9% downward adjustment to the list prices of the comparable vehicles is "to reflect consumer purchasing behavior (negotiating a different price than the listed price)." However, a 9% reduction on a used vehicle is **not** typical and does not reflect market realities.

19. Most fundamentally, this assumption is contrary to customary automobile dealer practices and inventory management where list prices are priced to market, in part to reflect the intense competition in the context of internet pricing and comparison shopping. A 9% reduction would be atypical and therefore is not proper to include in determining actual cash value. The inclusion of this significant downward adjustment purportedly premised on "consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle need to procure a replacement and have no time to search out the atypical deal Defendant presumes to exist without explanation or discernable, specified or itemized support.

20. The arbitrariness of Farm Bureau's downward adjustment premised on a "Projected Sold Adjustment" and "consumer purchasing behavior" is further demonstrated by the fact that at least one other valuation service does not apply such downward adjustments when calculating actual cash value in Arkansas.

21. Moreover, Farm Bureau provides no explanation as to how it arrived at the amount to be deducted. Instead, Farm Bureau provides an arbitrary deduction, that is not adequately specified nor explained and, as such, cannot be verified. Farm Bureau does not explain whether there is *any* reference source or data that was used in making its assumption much less specify and itemize such data (if it exists).

22. For Plaintiff, the valuation report used a "Projected Sold Adjustment" to reduce the value of each comparable vehicle by approximately 9%, which, consequently, improperly reduced Plaintiff's recovery under his policy by approximately 9%. These reductions bear no relation to the actual fair market value of the comparable vehicles or the loss vehicle. The price of each comparable vehicle used in the Mitchell Report was pulled from a dealer internet listing and, therefore, was priced to market. Exhibit 2 at pp. 5–6. The application of these arbitrary, nonitemized, and unexplained Projected Sold Adjustments to reduce the value of comparable vehicles artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured. Farm Bureau's actions and improper valuations violate its contractual obligations and Arkansas law applicable to insurance settlement practices.

**B. Farm Bureau Undervalued and Underpaid Plaintiff's Total Loss Claim.**

23. Plaintiff owned a F-150 XL 2 Door Regular Cab that was deemed a total loss on or about December 13, 2018.

24. Plaintiff made a claim with Farm Bureau for the total loss of his vehicle.

25. Farm Bureau provided a total loss valuation to Plaintiff for his total loss claim. Farm Bureau based its offer upon a valuation report obtained from Mitchell using the WCTL software program.

26. Farm Bureau valued Plaintiff's total loss claim at $5,907.95[1] and paid Plaintiff that amount. Farm Bureau's valuation was based on a market valuation report obtained from Mitchell using the WCTL software program. The market valuation report listed values of three different comparable vehicles and applied a "Projected Sold Adjustment" of approximately 9% to all three vehicles without itemizing or explaining the basis of the adjustment and/or how the value of the deduction was determined. The use of the "Projected Sold Adjustments" to adjust Plaintiff's total loss claim downward violates the applicable insurance policy, in that Defendant applied the improper adjustment to pay Plaintiff less than the "actual cash value" of his total loss vehicle.

## CLASS ACTION ALLEGATIONS

27. This action is brought by Plaintiff as a class action, on his own behalf and on behalf of all others similarly situated, under the provisions of Rules 23(a) and 23(b)(2), or, alternatively, 23(b)(3), of the Arkansas Rules of Civil Procedure, for declaratory judgment, monetary restitution, plus interest, injunctive relief, costs and attorney's fees. Plaintiff seeks certification of this action as a class action on behalf of the following class (the "Class"):

> All persons insured by a contract of automobile insurance issued by Farm Bureau to an Arkansas resident, and who, from the earliest allowable time through the date of resolution of this action, received a first-party total loss valuation and payment that included a downward adjustment premised on a "Projected Sold Adjustment" or similar adjustment.

---

[1] This amount is not inclusive of tax, title, and transfer fees.

28. Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants or employees of Defendants and the immediate family members of any such person. Also excluded is any judge who may preside over this cause of action.

29. The exact number of the Class, as herein identified and described, is not known, but it is estimated to be at least one hundred. Accordingly, the Class is so numerous that joinder of individual members herein is impracticable.

30. There are common questions of law and fact in the action that relate to and affect the rights of each member of the Class and the relief sought is common to the entire class. In particular, the common questions of law and fact include:

   a. Whether Farm Bureau systemically applied "Projected Sold Adjustments" or substantially similar adjustments to calculate the value of total loss vehicles;

   b. Whether, through the above referenced practice, Farm Bureau failed to pay its insureds the "actual cash value" of their loss vehicles;

   c. Whether, through the above referenced practice, Farm Bureau breached its contracts with its insureds;

   d. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief; and

   e. Whether Plaintiff and the Class are entitled to compensatory damages in the amount of the invalid adjustment applied to Plaintiff's and each Class member's valuation.

31. The claims of the Plaintiff, who is representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiff, depend on a showing of the same acts of Farm Bureau giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

32. The named Plaintiff is the representative party for the Class, and is able to, and will fairly and adequately, protect the interests of the Class. The attorneys for Plaintiff and the Class are experienced and capable in complex civil litigation, insurance litigation and class actions.

33. Class certification is appropriate under Arkansas Rule of Civil Procedure 23(b)(2) because Farm Bureau's actions are generally applicable to the Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class as a whole.

34. Class certification is also appropriate under Arkansas Rule of Civil Procedure 23(b)(3) because the common questions of law and fact in this case predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by Class members whose

claims are too small and complex to individually litigate against a large corporate defendant.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

35. Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

36. Farm Bureau's insurance contract with its insureds provides coverage for the total loss of a vehicle on the basis of actual cash value of the vehicle or the amount necessary to replace the insured vehicle with a vehicle of like kind and quality. Moreover, in determining the actual cash value of a total loss vehicle, Farm Bureau is required under its policy of insurance to consider the vehicle's "fair market value . . . at the time of loss or damage."

37. Farm Bureau has breached its contract with Plaintiff and the members of the Class by not paying total loss claims upon the actual cash value of loss vehicles. Farm Bureau departed from the use of actual cash value by basing its valuations and claims payments on the values of comparable vehicles that have been artificially reduced by an unjustified "Projected Sold Adjustment" that is (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) unmeasurable, indiscernible, nonitemized, unspecified and unexplained.

38. Farm Bureau's policy, and its duties to insureds, must be construed in the context of, and consistent with, Arkansas law applicable to insurance contracts. In Arkansas, for total loss claims that deviate from providing actual cost values, "[a]ny deductions from such cost, including deduction for salvage, must be measurable,

discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Arkansas Insurance Regulation 43, §10. The purpose of this requirement is to ensure that any adjustments are reasonable, justified and fully explained and to ensure that consumers have the ability to evaluate and challenge any deductions that are improper and/or without basis.

39. Farm Bureau's breaches have resulted in a systemic failure to pay the actual cash value of total loss vehicles as required under the contract

40. Farm Bureau's breaches of contract and violations of law have caused damages to Plaintiff and the Class. Plaintiff's and proposed Class members' damages include the amounts improperly deducted by Farm Bureau from the insureds' payments on the basis of a "Projected Sold Adjustment."

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT

41. Plaintiff hereby repeats and realleges all preceding paragraphs contained herein.

42. An actual case and controversy within the meaning of the Arkansas Declaratory Judgment Act, Ark. Code Ann. § 16-111-101, *et seq.*, which may be adjudicated by this Court exists between Plaintiff and the proposed Class and Farm Bureau.

43. Plaintiff, for himself and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff is seeking a declaration that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Farm Bureau, as well as a violation of Arkansas law, for Farm Bureau to base the valuation and payment of claims on values of comparable vehicles that have been reduced by a "Projected Sold Adjustments" that are (a) arbitrary, (b) contrary to industry practices

and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) unmeasurable, indiscernible, nonitemized, unspecified and/or unexplained.

44. Farm Bureau's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Farm Bureau has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class requiring it to settle total loss claims on the basis of the total loss vehicle's "actual cash value."

45. As a result of these breaches of contract, Plaintiff and the proposed Class members have been injured. Plaintiff's and proposed Class members' damages include the amounts illegally deducted by Farm Bureau from the insureds' payments.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a) determine that this action may be maintained as a class action under Rule 23 of the Arkansas Rules of Civil Procedure, appoint Plaintiff as class representative, and appoint undersigned counsel as Class Counsel;

b) enter an order finding that Farm Bureau's actions described herein constitute a breach of contract;

c) enter a declaratory judgment that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Farm Bureau, as well as a violation of Arkansas law for Farm Bureau to base the valuation and payment of claims on values of comparable vehicles that have been reduced by "Projected Sold Adjustments";

d)     enter an order enjoining Farm Bureau from basing the valuation and payment of claims on values of comparable vehicles that have been reduced by "Projected Sold Adjustments";

e)     enter an order requiring Farm Bureau to pay compensatory damages to Plaintiff and all members of the proposed class in the amount of 100% of the proceeds that Farm Bureau wrongfully deducted from its insureds' payments in the form of "Projected Sold Adjustments" or alternatively enter an order requiring Farm Bureau to prepare a total loss valuation for Plaintiff and each member of the Class that does not include any "Projected Sold Adjustments" or any other deductions that are arbitrary, unmeasurable, indiscernible, nonitemized, unspecified and unexplained and contrary to industry practices and consumer experiences;

f)     award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

g)     award reasonable attorneys' fees and costs pursuant to applicable law; and

h)     grant such other legal and equitable relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff and the Class members hereby request a trial by jury.

Respectfully submitted,

HANK BATES (ABN 98063)
TIFFANY WYATT OLDHAM (ABN 2001287)
LEE LOWTHER (ABN 2013142)
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th St.
Little Rock, AR 72201
Tel: (501) 312-8500
Fax: (501) 312-8505

-and-

JOHN RAINWATER
RAINWATER HOLT &SEXTON
801 Technology Dr.
Little Rock, AR 72223
Tel: (501) 868-2500


BY: /s/ Hank Bates

*Counsel for Plaintiff and the Proposed Class*